Okay we'll hear counsel in the first case United States v. Polk. May it please the court, counsel. My name is Stephen Becker and I represent Terrell Polk in this direct criminal appeal. Mr. Polk. Are you doing this pro bono or as appointed counsel? CJA counsel, your honor. With permission of the court I would like to reserve three minutes for rebuttal. That's granted. Thank you. Your honors, the issue is fairly narrow. Is possession of a weapon in prison by an inmate a crime of violence under the career offender guidelines? The applicable part of the definition of crime of violence under those guidelines requires that the offense be punishable by imprisonment for more than one year, and this offense is, so that's satisfied, and that it be a burglary of a dwelling, arson, extortion, or involve a crime using explosives, or, and this is the crucial part, otherwise involve conduct that presents a serious potential risk of physical injury to another. And that's what's at issue. And that's what's at issue because it's not one of the enumerated crimes. Is possessing, but isn't possessing a shank, doesn't that have the potential to have cause physical injury to another? Yes, your honor, it does. And we have conceded in our brief, and we concede here today, that it does actually present a serious potential risk of physical injury to another. This court concluded that in Kenny, a case of about seven years ago, that that was the case. But then the question becomes, is Kenny operative any longer after Begay? Or is there, that's correct, your honor, or is there another wrinkle that the court has to look at now, another test that the court has to look at? It's, what should we, what kind of weight should we give to the Tenth Circuit decision in Zuniga? I, this is hard for me to say because I obviously don't agree with it, and I don't think it's a very logical opinion. I think the court should give it whatever weight it thinks deserves. Obviously, it's a different circuit. That's obviously what we'll do. Right. I don't, I don't. What's the logical flaw? The logical flaw is, your honor, they essentially did what the, what the government's brief does. What they essentially say is that, look, this has a high degree of potential risk for physical injury, and we're conceding that it does. And therefore, therefore it's violent and aggressive. And that's where we get into the Supreme Court decision in Begay, because Begay's said, besides the, an offense coming under this having to be similar in the degree of risk of physical injury, it also has to be similar in kind to the four enumerated offenses. Now, those four enumerated offenses are burglary of a dwelling, arson, extortion, and committing a crime by use of explosives. Those are trespass crimes against persons or property. Possession of a weapon is a But isn't it different if it's in prison? You may be right if it's somebody walking down the street, but in a prison environment where you are in close contact with other people, doesn't that make it different? Isn't that what's an element in burglary, etc., because you are put in a physical position where you can, where it's likely or probable that a crime will be committed, that it will be used. I, and I agree with that, but Your Honor, I think that's really the first part of the test. The test is now twofold. Does it present a serious potential risk of physical injury? And I think Your Honor is arguing that it does, and we concede that. Suggesting, asking. Excuse me. But I think the second test that the majority in the Supreme Court in Begay said, you also have to look and see, is it of a similar kind? And it's not of a similar kind. Because? Because it's just a possessory offense. There's no person involved. They're not stealing property. If there was a bar exam question that said, which, if any of these, don't belong on the list, and the list was burglary of a dwelling, arson, extortion, and committing a crime by use of explosives, and possession of a weapon in prison, I think that most people. Well, if it said that, we wouldn't be here. Well, I think most people wouldn't. I'm arguing that. The reason we're here is because there's a gap, and we have to fill it in, obviously. Yes. If it's specifically said possession in a prison, that's the end of the story. And you know that. So let me ask you this, Mr. Begay. You started in your brief by saying that in Begay, and then you cite a series of circuit court cases after that, it's clear that the Armed Criminal Act and the Career Offender Guideline are essentially, that they're coextensive. That's your assertion in your brief. But you don't cite our opinion in Parson, which, of course, is controlling on us. What is it that makes Parson, and for that matter, Kenney, no longer good law after Begay? Well, Parson, Your Honor, I think should be read now, especially, as a very narrow decision. It goes back, as the Court knows, to 1992. And I think what that panel said, let me remind everybody what Parson is. Parson was a reckless endangering. That was the offense. And the question was, did that come under the otherwise clause? And it was a career offender case. And the appellant, the defendant in that case, argued that, no, that otherwise clause involves just property offenses. And the panel said, and this is really the holding of the panel, the panel said, no, that may be true for the Armed Career Criminal Act, which reads exactly the same as the career offender. That may be what Congress intended in the Armed Career Criminal Act case. But there's no indication that the commission intended that, the sentencing commission. The sentencing commission either was unaware of Congress's intent with the Armed Career Criminal Act or rejected that notion. And so what the Parson panel said, and this is really what the holding is, that the crimes that come under that otherwise clause can be either crimes against persons or crimes against property. And that's really, I think, the only holding of them. So they're not coextensive only to that limited extent? That's all that Parson says, Your Honor. I mean, this Court can find that they're not coextensive in some other way. But that's really all that Parson ever delineated. And I would point out, Your Honors, that since Begay and since Chambers, Chambers is also an Armed Career Criminal Act case that was escaped by the Supreme Court. And since both of those cases, the Supreme Court has, in many cases, at least a score, I believe, has granted cert, vacated judgment, and remanded to the circuit court for review in light of Chambers and Begay. Yeah, we've had that happen to a panel. I was going to say, Judge Slobiter, one of your cases, Hopkins. Yes, I know. We well know. It was Judge Nygaard's NPO. Okay. Right? I thought it was yours. No, it was mine. It was yours, I believe. Okay. But this is a good example, because it's like Kenny. You were following, Judge Slobiter, you were following precedent, and you affirmed that it was a crime of violence under the career offender guidelines. But now the Supreme Court has suggested that circuit courts take another look at even career offender cases. And this was not an ACCA case, not an Armed Career Criminal Act case. It was a career offender case. So the Supreme Court is saying that, look, we think that at least the courts, circuit courts, should look at whether our holding in the ACCA case should also apply to career offender cases. Now, assuming that we agreed with you, doesn't the fact that two circuits, the 10th and by this hypothetical the 3rd, could see the effect of Begay differently in a context like this mean that the district court's error was not plain? Because we're under a plain error review here, right? Well, yes, Your Honor, and that's certainly a possibility. But there's also another way that this court can and I believe should review this case under ineffective assistance of counsel. Sure, but stick with me on this point. Isn't it the case that if you've got a circuit split, obviously reasonable minds, I mean, you wouldn't assert that the 10th circuit's unreasonable, I assume. I would not do that. So if reasonable jurists Might not say that about some of the others. Yeah, if reasonable jurists look at it and say, you know, it could go either way, we could hardly fault the district court and say its error was plain even if we thought it was error. Isn't that right? I'm not sure, Your Honor. I think it's fairly clear in retrospect, and I think the 10th circuit is just dead wrong, I think it is fairly clear in retrospect that given the dictates of Begay that possession of a weapon in prison is just not similar in kind. I think it just stands out of the four enumerated offenses. We have to apply categorization here. We don't look at the individual facts, do we? Actually, under the career offender guidelines, the court is permissible to look at the individual facts. Then if we can look at the individual facts, what is a prisoner doing with a shank if not prepared to use it when it suits that prisoner's wishes? I mean, I don't walk around with a shank. You don't walk around with a shank. No, and of course I'm not even sure I know what it is, but it's a piece of metal that's sharp. Yes, and we're conceding that it can be used as a weapon. That's not an issue. So if we're allowed to use, to look at the facts, then what, I mean, you could say for defense, but that's Well, for defense, or in this case, Your Honor, the facts are, and I think this is He wasn't shaving with it. No, no, Your Honor, you're right. It was found in an envelope with his legal materials. So So we don't know what he was going to do with it. Was he holding it for somebody else? Was he going to use it just to defend himself? Did he want people to note, was there a gang after him? We have no idea what he was going to use it for. If there was an assault involved, then there would be no question that it would be a crime of violence. What he was going to use it for. I mean, isn't this prison context something that makes the possession of a weapon a little different? I mean, what use is there for a shank except for violence? What permissible use? He had it as a bookmark. No, I'm not. I mean, that hardened, sharpened piece of dental compound was in there because presumably, whether defensively or offensively, it was going to be used in a violent and aggressive manner. It wasn't going to be used as a doorstop or something else. What other reason is there to have one? I don't know, but I don't think that's really the issue because I think the issue, that's the first prong. What you're arguing, Judge Jordan, and what you're suggesting is that it's a high potential risk of violence, of physical injury. But that's the first prong. I'm trying to key you on it because I'm conceding the first prong. The second prong is, is it the same kind of offense as burglary and arson and extortion and use of explosives committing a crime? And one more point about Parson. Is that a no or an and? Do you have the, is it, is that the second prong an and? It can be either one of those four enumerated offenses or otherwise involve criminal activity that presents a high risk of physical injury. Your argument after Begay is, in answer to Judge Holder's question, that that two-part test, that's not a disjunct, that's a conjunctive. Yes. And it has to be like the enumerated crime. Exactly. A similar kind. And what the Tenth Circuit did and what I think the government is doing in this case is really ignoring that second prong. And that's what, if you look at Judge Scalia's concurrence in Begay, he doesn't like the fact that the, for a crime to now be a crime of violence under ACCA, that it has to also be similar in kind. He thought it was sufficient if it be similar in degree of risk of physical injury. But that was not the majority opinion. The majority opinion gave this other, and it's conjunctive, this other requirement for a crime to come under. You know, it's an or, it's not an and. I just went back to the statute has as an element the use, attempted use or threatened use, or is burglary, et cetera. So if you. I think that the point is that the Supreme Court's reading that or as an and. Is that it? No, the Supreme Court has had an extra wrinkle. Here's why Parson is not. No, it's the second or he's looking at. Go ahead. Here's why Parson isn't any broader than what I suggested a few minutes ago. What the Supreme Court did in Begay is, what Justice Breyer did, is look at the language of the statute. And using statutory construction principles, they wanted to make sure that every clause and word had an effect. And so the majority in Begay said otherwise meant not only must it present a significant risk of injury, but it must also be like those other crimes, the enumerated ones. But that's talking out of the statute, the second or. That's what the Supreme Court said in Begay. It's not in the statute, Your Honor. It's what the Supreme Court said in Begay. It gave an extra requirement besides just. And Begay is quite clear because Justice Scalia in his concurrence doesn't like that ruling. He doesn't think that it should have to also be similar in kind. He just thinks it should have to be similar in degree of risk. Okay, well, your red light is on. I think you reserved some rebuttal time. Yes, I did. Thank you. Okay, so we'll hear you after the government. Thank you. It's nice to finally see you. You write all these briefs, but mostly we do them on submissions. You're not complaining about that, are you? No, I don't think he understood. Okay. I wasn't talking to you. I thought you were talking to Mr. Becker. I'm sorry, yes. He writes a lot of briefs. Go ahead. May it please the Court, George Rocktash on behalf of the United States, at the outset we would like to say that a Schenck case like this one is like one of the enumerated offenses because an inmate is likely to use it in a prison the same way an armed career criminal is likely to use a gun violently against the victims. And ultimately in Begay when the Court looked at whether or not something was like one of the enumerated offenses, the Court looked at the purpose of the ACCA and determined that under that, a person who committed a DUI was not likely to use a gun the same way someone who committed a burglary or an arson would likely use a gun to commit a harm or an injury to a victim. But the question then becomes is the possession of a Schenck, I mean as the Supreme Court said in Begay the statute covers only similar crimes rather than every crime that presents a serious potential risk of physical injury to another. Here clearly there is a potential risk of injury to another. But is it similar after the last or in two, that is you've got is burglary of a dwelling, arson or extortion involves use of explosives or otherwise involves conduct that presents a serious potential risk of physical injury to another. The language that the Supreme Court was looking to in the Armed Career Criminal Act is almost identical to what I just quoted in the sentencing guidelines. And the question becomes do we follow that for this? Because it seems that it's right on point even though it may seem a bit counterintuitive and I think that was the problem that the Tenth Circuit had with applying it to the sentencing guidelines. Well, our position would be that under Parson, Kenny is still viable case law. That's still the law in this circuit. But we don't think. Unless we determine that Kenny was in effect superseded by Begay. I mean what are we to make, Mr. Archibald, out of the Supreme Court sending cases back to everybody saying hey. Take a look at it. Take a look at this career offender thing in light of our ACCA decision. Well, we think that the court should find both under its earlier precedent and under Begay that this offense is not only a crime of violence under the sentencing guidelines but is also a violent felony under the ACCA. We think that that would obviate the need for you to revisit or reverse a case like Kenny or jettison the analysis in Parson. Parson, we think, can be harmonized with Begay. Well, Parson focused on the question of whether or not the definition of crime of violence lassoed too many offenses including child neglect and DUI under that definition. In this case, we don't have reckless conduct. You don't use a case recklessly. You don't use a shank recklessly in prison. I think you just put the rabbit in the hat. You just said use. This is not a case where he was charged with using anything. Or attempted use. He was charged with possessing. That's it. We totally agree with the court. However, Begay looked at the purpose of the statute they were analyzing and determined that what made something like burglary, arson, and extortion, setting aside the potential, the serious potential for risk, was the likelihood that the offender would actually use the gun. Mr. Ravachtishev, could you focus on the word conduct in subsection 2? Did I kind of morph my answer to you? No. It says or otherwise involves conduct that presents a serious potential. Now, the enumerated crimes, burglary, arson, extortion, use of explosives involve conduct, things that we would call conduct. Is possession conduct? Well, possession in this context is for a number of reasons. First of all, the definition of a weapon itself. It's designed or intended to be used as a weapon. It requires some kind of activity to create a shank in a prison setting. And in addition, the fact that it is in a prison context means that you have to find ways to hide it because it's a prohibited object that can't be carried. In this case, the shank was made out of dental compound, which could be used to beat the metal detectors in the prison. Well, clearly, everybody, he concedes that it's potential use. But the question is, don't we have to decide whether possession is conduct? I think. I mean, in order to fit within the or otherwise clause. Well, I think there is knowing and intentional conduct when you possess a shank in prison. The physical act of possessing it represents the conduct in this offense. And it's been characterized by Mr. Becker in his brief as passive conduct, and there's been some distinction made between passive and active conduct. But in this setting, with this particular kind of offender, it's not passive conduct to be able to possess a shank. Does that still get you around Begay? Because in Begay, DUI is clearly conduct. Begay is conduct, but the court in there distinguished a DUI from something like a burglary or other in-kind conduct because it involves strict liability, or as this court determined in Parson, something akin to recklessness or a heightened form of negligence. We don't have that in this case. They distinguished it because they said that the listed crimes, quote, all typically involve purposeful, violent, and aggressive conduct. Now, granted, and I don't think anybody's arguing to the contrary, the possession of a shank has the potential for violent and aggressive conduct. And Mr. Becker, although he tried valiantly to say, you know, who knows what he's going to use it for, I don't think there's any sound argument that there's any use for it but for violent and aggressive conduct. Or the threat of violent and aggressive conduct, which in itself, whether I guess in the DUI you had it. Yeah. But how does the mere possession of it, as opposed to the use of it, the possession of it alone constitutes something? I mean, doesn't that do violence to the notion or the distinction between use and possession? I mean, there is a distinction, you'd concede, I suppose, between using something and merely possessing it, right? Of course. Okay. So if there's a distinction there, how is the mere possession of it, which by definition is passive, aggressive, how does it become violent and aggressive in the way the Supreme Court said these enumerated crimes are? Well, we believe that it's purposeful because it's designed or because of the designer or intended language that's embodied as one of the elements of the offense. And as to whether it's aggressive or violent, conduct's aggressive when it indicates some activity or disposition toward forceful conduct or violent conduct. And when you pack a shank in a prison, we believe that it's evidence that you are disposed. It's conduct which shows that you are disposed to violent or aggressive behavior. Because in a prison, if you don't... Isn't that the number of it? That's what we're trying to, at least I'm trying to get my head around. You're saying it has... You keep going back to the notion that it has the potential for violence and aggression. But is that potential in and of itself enough or is that... Let me ask it this way. What in the gay leads you to say that the potential is sufficient to constitute violent and aggressive behavior of the sort that the Supreme Court analogized to the enumerated offense? Let me add to that, which is the position of Justice Alito in his dissent in Begay. But you're asking us to accept that position. Well, I would refer the Court to language that was cited at the Supreme Court reporter at page 1588 where the Court talked about aggressive crimes committed intentionally such as arson, burglary, extortion. What are you quoting from? I'm quoting from Begay, Your Honor. What page of Begay? It would be at page 1588. Okay, go ahead. And the Court went on to state, quote, the latter are associated with a likelihood of future violent, aggressive, and purposeful armed career criminal behavior in a way that the former is not. And the Court also, shortly before that, indicated that the conduct which Begay identified under the ACCA as purposeful, violent, and aggressive, quote, is such that it makes it more likely that an offender later possessing a gun will use that gun deliberately to harm a victim, close quote. And that's at page 1586. So the Court is looking at likelihoods. We can call it potential for conduct or risk, but the Court focused on the likelihood that the armed career offender is going to actually use the gun. And they determined, based on the purpose of the statute, that a burglar, an arson, or someone convicted of a similar crime would be likely to do that. We think the same is true of a prisoner with a shank. In Chambers, the Court also looked at the potential for violence associated with purposeful, violent, and aggressive behavior. I believe that's a... Well, Chambers was an escape case. It's really a failure to return, Judge Lovetter. There's two kinds of escape. This is a failure to return escape. And that was a lesser, more passive. And to give maybe some further explanation for Judge Jordan's question about conduct, the Supreme Court in Chambers viewed that as the kind of passive conduct and distinguished between more active conduct. Well, I went through that report and all the things that had happened. I'm not sure Chambers has really helped with all due respect. I'm not sure Chambers is really helpful in what we're doing now. It isn't directly on point. We agree, Judge Lovetter. But what we think it does is show the analytical process of the Supreme Court when it's confronted with conduct that is truly passive. That portion of the Mass... I think it was the Massachusetts statute had a variety of escapes, ranging from actually escaping from a penal institution to failure to return on a weekend, like a furlough or something like that. And that's what Chambers was charged with. And that's truly more active. Whereas when you're in a prison setting and you've got a shank that you've got to hide in your legal papers, you've got to make it out of dental compounds, secrete the compound, form it, grind it, sharpen it, put an edge on it. It means you should have had a different job in the real world. Well, we agree, Your Honor. But under the circumstances, we can't discount the ingenuity of inmates in the penitentiary. I understand. I mean, you know, it would be an easy case if we didn't have the gate. And I take it your assertion is that a prisoner with a shank is the same thing as a... Burglary? As a career criminal in possession of a gun. Absolutely. And that that's... And that the Armed Career Criminal Act by definition covers the latter and, therefore, by analogy, this sentencing guideline should cover the former. That's correct. And one situation that is distinguishable, and I think the post-Begay Circuit cases show that, I think it's the Archer decision. I'm not sure it was cited by the appellant, but that's a case where there was a charge of carrying a concealed weapon under Florida law. And I believe that, if I'm not mistaken, held that that wasn't a violent felony under the ACCA and Begay. We would contrast some commentary in sentencing guideline section 4B1.2 dealing with definitions of terms like crime of violence. And it talks about crime of violence does not include the offense of unlawful possession of a firearm by a felon unless the possession was of a firearm described in Title 26, Section 5845A, which deals with short-barreled weapons like shotguns. And there the sentencing commission is distinguishing between weapons that carry a greater likelihood of use to harm people. You mean like Uzis? Like an Uzi, like an automatic weapon, or a sawed-off shotgun. That covers sawed-off shotguns. And that's a lot like a shank in a prison. It's a specialized weapon in a specialized setting with a special offender. And that's the kind of offender who's more likely to use it. So what, why, there's a, one of the enumerated offenses is use of an explosive, not possession of an explosive, but use of an explosive. Potential. Yeah, potential. What, does the fact that the statute itself talks in terms of use, should that have any weight in our consideration of your argument? I think focusing, Your Honor, on the literal term use of an explosive may tend to take us off the analytical path. Yeah, but don't we have to do that when we're looking at a statute and we're told that you have to do something similar to that? You know, if we didn't have Begay, you'd have an easy, I think, you'd have an easy job by the statutory language. We agree, Your Honor. But they interpreted the statutory language for us. We agree, Your Honor. But we think that the Supreme Court focused on this likelihood of risk, this likelihood of use, and we think the Court should too, in analyzing whether or not this offense is similar to those. Are you talking about Begay? I thought what the Supreme Court focused on was that it has to be similar crimes as to what's noted rather than every crime that presents a serious potential risk of physical injury to another. It did, but when it went on to analyze whether or not something was like those enumerated offenses, it looked at the purpose of the statute and it looked at the likelihood that the person with those kinds of convictions, burglary, arson, et cetera, would actually use the gun to harm somebody. Interestingly, both the Career Offender Provision and the ACCA look at the prospective, the future conduct of the offender, and that's what we think the Supreme Court did in Begay. It did it in Chambers, and we think the Court should apply that analysis in this case as well. Thank you very much. Thank you, Your Honor. Just briefly, Your Honors. Mr. Rectoshal mentioned Archer, and that is an interesting case. It's out of the Eleventh Circuit, because it is very close to this case. It was a possessory offense, unlawfully concealing a weapon. And here's what the Eleventh Circuit Court said. By the way, it was a career offender case, not an ACCA case, so that's also similar to the case. But don't you agree that they're the same? I do, yes. Okay. All right. For this purpose. For this purpose, I do. Okay, good. The Archer Court concluded as follows. We do not wish to minimize the danger that possession may quickly transform into use, especially when the firearm is readily accessible. The act of possession does not, without more, however, involve any aggressive or violent behavior. And they found that it did not meet the second prong of the Begay test, that it was not similar in kind, because it was not purposeful, violent, and aggressive. And all three of those have to be satisfied. How do you respond to the argument that your opponent makes, that the Armed Career Criminal Act itself is about possession? I mean, that's what the act's about. So if we're talking about analogizing to the Armed Career Criminal Act, which is about possession, surely an inmate in possession of a weapon is at least as likely to do something violent with it as a career criminal with a gun, and therefore it meets it. That's interesting, Your Honor, because the felon in possession of a weapon, interestingly enough, is the trigger for the Armed Career Criminal Act, but it's not one of the permissible predicate offenses. For the Armed Career Criminal Act, it has to be felon in possession. That's the trigger. Then there have to be three predicate offenses, which are either drug trafficking crimes or crimes of violence. But it's been well established now that the triggering offense is not itself a crime of violence, either under so if the person had a prior felon in possession, that would not count as one of the predicate offenses. And it's also, right within the guidelines, it's not a predicate offense for a career offender either. So for ACCA, that's just what triggers whether somebody should get a long sentence or not, a 15-year sentence. The rationale was that since this person had three crimes of violence, even though possessing the gun ordinarily is not a crime of violence, that makes this person particularly dangerous when he has a gun. But that's not what the career offender guidelines have nothing to do with that. To trigger the career offender guidelines, the present offense, the triggering offense, has to be either a drug trafficking crime or a crime of violence. The felon in possession will not trigger the career offender guidelines. Thank you. Thank you. We'll take the matter under advisement.